Virginia M. GUTTING, Appellant,

v.

**FALSTAFF BREWING CORPORATION,**
a Delaware corporation, Appellee.

No. 82–1778.

United States Court of Appeals,
Eighth Circuit.

Submitted April 13, 1983.

Decided June 29, 1983.
Rehearing and Rehearing En Banc
Denied July 26, 1983.

David G. Dempsey, Shifrin, Treiman, Barken, Dempsey & Ulrich, St. Louis, Mo., for appellant.

Shepherd, Sandberg & Phoenix, P.C., Steven P. Sanders, St. Louis, Mo., for appellee Falstaff Brewing Corp.

Before LAY, Chief Judge, and McMILLIAN and JOHN R. GIBSON, Circuit Judges.

LAY, Chief Judge.

Virginia M. Gutting appeals from an order of the district court, the Honorable William L. Hungate presiding, entering summary judgment in favor of Falstaff Brewing Corporation and denying her motion for summary judgment. Gutting's primary argument on this appeal is based on the claim that the district court erred in denying her motion for leave to file answers out of time to Falstaff's request for admissions and in ordering the matters set forth in the request deemed admitted. Gutting further contends that regardless of the admissions Falstaff has violated certain provisions of the Employee Retirement Income Security Act of 1974 (ERISA), and the district court erred in denying her motion for summary judgment on the issue of liability. Because we conclude that the district court erred by not allowing Gutting to file late answers to the request for admissions, we reverse and remand. 541 F.Supp. 345 (E.D.Mo.1982). We do not reach Gutting's ERISA argument.

Virginia Gutting is the widow of Ferdinand (Ferd) J. Gutting, former member of the Board of Directors and President of Falstaff. In 1972 Falstaff established an insurance plan for certain key employees. Pursuant to this plan, in January 1973, Ferdinand Gutting entered into a written agreement with Falstaff entitled Employee's Death Benefit Agreement. The purpose of the agreement was to provide for Falstaff's payment of a death benefit to Virginia Gutting, Ferd Gutting's designated payee. Falstaff purchased three life insurance policies on Ferd Gutting's life to secure this obligation. The agreement provided that all benefits would be forfeited if (1) the life insurance policies were contested successfully by the insurance company; (2) the employee left Falstaff's employment voluntarily, subject to certain vesting provisions; or (3) the employee was discharged "for proper cause."

In early 1975, Paul Kalmanovitz purchased voting control of Falstaff and became Chairman of the Board.[1] Subsequently, for reasons in dispute in this lawsuit, Ferd Gutting's employment with Falstaff was terminated and the Board of Directors voted to deny Ferd Gutting all benefits

---

1. For background information about Kalmanovitz and Falstaff, see *Dependahl v. Falstaff Brewing Corp.*, 491 F.Supp. 1188, 1190–93 (E.D.Mo.1980), *aff'd in part and rev'd in part*, 653 F.2d 1208 (8th Cir.), *cert. denied*, 454 U.S. 968, 1084, 102 S.Ct. 512, 641, 70 L.Ed.2d 384, 619 (1981).

because his termination was for cause. Ferd Gutting died in December 1980. Falstaff has refused to pay the amounts due to Virginia Gutting pursuant to the terms of the Employee's Death Benefit Agreement and she brought suit to recover the proceeds. Throughout this litigation Falstaff has asserted as an affirmative defense that Ferd Gutting was terminated for cause and thus forfeited all benefits due his beneficiary under the agreement. Virginia Gutting claims the termination was not for "proper cause" as that term is defined in the agreement.

*Procedural History.*

Virginia Gutting filed a complaint on July 8, 1981, through her attorney James S. McClellan. On September 30, 1981, Falstaff filed a motion to disqualify McClellan because he formerly had been a member of Falstaff's Board of Directors and outside general counsel to Falstaff. Falstaff asserted that McClellan had material, firsthand knowledge of events relevant to Falstaff's defense and that McClellan would likely be called as a witness. While the motion to disqualify was pending, on October 13, 1981, Falstaff filed its request for admissions, first interrogatories, and request for production of documents.[2] Thereafter, the district court held a conference at which McClellan indicated he would withdraw voluntarily. On December 4, 1981, McClellan formally withdrew.

On December 11, 1981, Harry B. Wilson entered his appearance on behalf of Gutting. On January 4, 7, and 8, 1982, Falstaff served notices of 15 depositions to begin on February 8 in Providence, Rhode Island, and to continue throughout February and early March around the country. On January 7 counsel for Falstaff, Steven P. Sanders, sent a letter to Harry Wilson concerning the failure to respond to the request for admissions and asking for the answers. Wilson and Sanders discussed the request over the telephone several days later and Sanders agreed to wait an indefinite period of time.

According to an affidavit filed by Wilson he began to prepare for the upcoming depositions and to draft responses to discovery requests on January 29, 1982. Wilson further swore that on January 30 he concluded his firm had a serious conflict of interest because some of the scheduled deponents were current clients of the firm. These clients had on-going litigation matters with Falstaff.[3] Wilson researched the nature of the conflict, discussed it with lead counsel in the case, and called Sanders on February 6, 1982, to inform him of the conflict of interest. On February 8 Wilson appeared before the district court and requested leave to withdraw. The motion evidently was pending throughout February and the scheduled depositions for February were postponed.

Falstaff alleges that on February 27, 1982, Wilson again telephoned Sanders to advise him that the depositions scheduled

---

**2.** Falstaff's request for admissions strategically concerned the major contested factual issue in the case of whether Ferd Gutting had been discharged for cause. The request stated in full:

    1. Admit that the life insurance program set forth and discussed in your complaint allowed Falstaff to terminate all life insurance benefits with respect to any employee whose employment was terminated "for cause."

    2. Admit that if "cause" existed for the termination by Falstaff of Ferd Gutting's employment, Falstaff had the right to terminate all life insurance benefits otherwise available to Ferd Gutting and his heirs and beneficiaries.

    3. Admit that Ferd Gutting was told by Falstaff at the time of the termination of his employment by Falstaff that he was being discharged from his employment "for cause."

    4. Admit that Ferd Gutting was discharged from his employment with Falstaff "for cause."

    5. Admit that at the time of Ferd Gutting's discharge from employment with Falstaff and for a period of at least two years prior thereto, Ferd Gutting served as President and a member of the Board of Directors of Falstaff.

**3.** The clients in question were Charles Dependahl, William Healy, and John Calhoun, the plaintiffs in *Dependahl v. Falstaff Brewing Corp.,* 491 F.Supp. at 1190.

for the following week would have to be canceled. Sanders refused, in part due to a March 15 trial setting, and both parties appeared in court on March 1. Wilson sought a protective order asking the court to postpone the March 2 and 3 depositions because of his conflict of interest. The court indicated the depositions would not be delayed unless new counsel for Gutting entered an appearance. Later the same day, Gutting's third attorney, David G. Dempsey, entered his appearance and the depositions were postponed one day. The court granted Wilson leave to withdraw and continued the trial setting until June 7, 1982.

On April 9, 1982, Dempsey filed several motions on behalf of Gutting, including a motion for leave to file answers to the request for admissions out of time. On the same date, Falstaff filed a motion for summary judgment on the theory that all fact issues in the case had been admitted by Gutting's failure to make a timely response to the request. On April 21, the court denied Gutting's motion for leave to file the answers and delayed ruling on Falstaff's summary judgment motion. The case was still scheduled to proceed to trial on June 7, 1982, and Falstaff chose to proceed with 11 scheduled discovery depositions. On May 28, 1982, the district court granted Falstaff's summary judgment motion. The court ruled there was no genuine issue of material fact that the death benefits had been properly withheld under the terms of the agreement because the matter of Ferd

Gutting's termination for cause had been deemed admitted. The court also ruled in Falstaff's favor on the ERISA issue, holding that the forfeiture provisions of the Death Benefit Agreement were not void.[4]

*Discussion.*

### 1. *Prejudice to Falstaff.*

■ Falstaff's request for admissions was filed pursuant to rule 36(a) of the Federal Rules of Civil Procedure. Rule 36(a) provides in part that each matter requested is deemed admitted unless the responding party serves a written answer or objection within 30 days. The court may allow a shorter or longer time for response. Because the district court has the power to allow a longer time, courts and commentators view this to mean that the court, in its discretion, may permit the filing of an answer that would otherwise be untimely. *See, e.g., Moosman v. Joseph P. Blitz, Inc.,* 358 F.2d 686, 688 (2d Cir.1966); *Pleasant Hill Bank v. United States,* 60 F.R.D. 1, 2–3 (W.D.Mo.1973); 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2257, at 719–20 (1970). Therefore, the failure to respond in a timely fashion does not require the court automatically to deem all matters admitted. *See* Finman, *The Request for Admissions in Federal Civil Procedure,* 71 Yale L.J. 371, 432 (1962). *But see Luick v. Graybar Electric Co.,* 473 F.2d 1360, 1362 (8th Cir.1973) (unanswered request render matters requested conclusively established). Similarly, the granting of a motion to file

---

4. Gutting argued in the district court that the forfeiture, or "bad boy," clauses in the agreement were void under sections 403(c)(1) and 406(a)(1)(D) of ERISA, 29 U.S.C. §§ 1103(c)(1) & 1106(a)(1)(D) (1976 & Supp. V 1981). These sections limit the use of the assets of an employees' benefit plan. In support of this contention Gutting relied on *Winer v. Edison Bros. Stores Pension Plan,* 593 F.2d 307, 311–13 (8th Cir.1979). The district court rejected Gutting's argument, noting that *Winer* was decided in the context of a pension plan and that the agreement here was an employee welfare benefit plan. *See Dependahl v. Falstaff Brewing Corp.,* 653 F.2d 1208, 1213–14 (8th Cir.), *cert. denied,* 454 U.S. 968, 1084, 102 S.Ct. 512, 641, 70 L.Ed.2d 384, 619 (1981). The district court concluded that ERISA did not prohibit the for-

feiture of benefits under an employee welfare benefit plan.

It is not necessary for us to decide whether the district court correctly ruled on the ERISA issue. Because of our conclusions regarding the request for admissions, a ruling on the ERISA matter would be premature. We are remanding to the district court for plenary proceedings; in light of the admissions issue, it may not be necessary for the district court to discuss ERISA at all. Therefore, we vacate the district court's judgment regarding the effect of ERISA on this agreement and request that the court hold its ruling on ERISA in abeyance until such time as it becomes necessary to decide that question.

the answers out of time is limited by the court's discretion.

This court discussed the proper limits of a court's discretion for allowing late answers to a request for admissions in *Warren v. International Brotherhood of Teamsters,* 544 F.2d 334, 339–40 (8th Cir.1976). In *Warren* counsel for defendant misread the time limits in rule 36(a) and filed the answers 15 days late, one day after trial had begun. The district court first deemed the matters admitted, but allowed the defendants to introduce evidence. In a post-trial opinion the district court ruled that the matters would not be deemed admitted and that the introduction of evidence was proper. On appeal this court agreed with the district court that *Pleasant Hill Bank v. United States,* 60 F.R.D. at 3, set out the applicable law. The *Pleasant Hill* court determined that a late response was equivalent to a withdrawal of an admission. It then adopted the test announced in rule 36(b) for permitting withdrawal of admissions as the test to determine whether late answers should be allowed. Rule 36(b) states in pertinent part: "[T]he court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits."

Other courts have applied the same test. *See, e.g., Herrin v. Blackman,* 89 F.R.D. 622, 623–24 (W.D.Tenn.1981); *St. Regis Paper Co. v. Upgrade Corp.,* 86 F.R.D. 355, 357 (W.D.Mich.1980) (granting defendant's motion to permit late filing of response); *see also French v. United States,* 416 F.2d 1149, 1152 (9th Cir.1969) (trial court has discretion to permit late response where no prejudice shown). In the instant case, however, the district court did not apply this test when evaluating Gutting's motion to file answers out of time. The court denied Gutting's motion because she never requested an extension of time from the court and

the court never granted an extension. Although acknowledging the informal agreement between the parties to extend the time for responding, the court stated that such agreements do not protect the court's own interest in the management of its cases. The district court also based its decision on the "pattern of delay" demonstrated by Gutting and her apparent propensity to "flout" the time limits of the Federal Rules of Civil Procedure. The district court did not find that Falstaff would be prejudiced by allowing late answers to be filed.

■ Falstaff argues that prejudice is not important because the district court denied Gutting's motion to file answers out of time as a sanction for discovery abuse. The district court focused on the delay and almost nonexistent prosecution of this case. Falstaff contends that the court had the power to prevent abuse and impose sanctions. We would agree with Falstaff that deeming the matters admitted is a form of sanction and may be appropriate in certain cases. *See Asea, Inc. v. Southern Pacific Transportation Co.,* 669 F.2d 1242, 1247 (9th Cir.1981) (district court may order a matter admitted as a severe sanction when a party has "intentionally disregarded the obligations imposed by Rule 36(a)"). However, in *Asea* the court determined that admissions would be an appropriate sanction because the responding party had sufficient information to admit or deny the requested admissions and answered that it lacked the information. Further, the *Asea* court faced a pattern of intentional disregard of discovery requests. *Asea* is distinguishable and is not authority for disregarding the rule 36(b) test when evaluating a motion to file answers out of time. Regardless of the intentions of the district court to sanction Gutting, we find the district court erred in not considering the factors set out in rule 36(b).

■ Falstaff further contends that even if a showing of prejudice is necessary, it has satisfied that requirement. Falstaff claims that even though it considered the

matters in the request to be admitted, it could not be sure of the court's position and noticed depositions to begin on April 22. The court ruled the matters in the request admitted on April 21 and Falstaff elected to proceed with the depositions because it did not know whether the court might reverse its position. Falstaff claims taking those costly depositions shows it would have been prejudiced if the court had allowed late answers. Falstaff misconstrues the prejudice requirement. Rule 36(b) states that the party obtaining the admissions must show the withdrawal will "prejudice him in maintaining his action or defense on the merits." The prejudice contemplated by the rule "relates to the difficulty a party may face in proving its case" because of the sudden need to obtain evidence required to prove the matter that had been admitted. *Brook Village North Associates v. General Electric Co.,* 686 F.2d 66, 70 (1st Cir.1982); *accord Westmoreland v. Triumph Motorcycle Corp.,* 71 F.R.D. 192, 193 (D.Conn.1976). Falstaff has made no showing that it will be unable to produce evidence of Ferd Gutting's discharge for cause. It apparently has completed its discovery on this issue. We conclude that Falstaff has failed to show it will be prejudiced in maintaining a defense on this issue.[5]

### 2. *Conflicts of Interest of Gutting's Counsel.*

■ Gutting also contends that the late responses should have been allowed because Falstaff's motion to disqualify McClellan and Wilson's withdrawal due to his conflict of interest rendered her without effective representation. The conflicts of interest experienced by McClellan and Wilson disrupted their professional duties to take actions best suited to furthering Gutting's interests. Once the conflicts became apparent, each attorney became unable to exercise his independent professional judgment.

Gutting seems to be arguing that she should not be penalized because of her attorney's "inability" to take actions on her behalf. *Cf. Societe Internationale v. Rogers,* 357 U.S. 197, 212, 78 S.Ct. 1087, 1095, 2 L.Ed.2d 1255 (1958) ("Rule 37 should not be construed to authorize dismissal of this complaint because of petitioner's noncompliance ... when it has been established that failure to comply has been due to inability, and not to willfulness, bad faith, or any fault of petitioner.") (footnote omitted). We agree that her counsels' conflicts of interest should have been considered by the district court.

■ The rules of professional responsibility that prohibit an attorney from representing differing interests are designed to protect the client from the attorney's potential abuses. *See* Model Code of Professional Responsibility DR 5–105 (1980) (prohibiting representation of a client if it would require the representation of differing interests or if the independent professional judgment of the lawyer might be impaired); *Developments in the Law—Conflicts of Interest in the Legal Profession,* 94 Harv.L.Rev. 1244, 1254 (1981) ("Conflict-of-interest rules attempt to ensure the lawyer's dedication to the client and the client alone.") (footnote omitted). It would appear to us that the purpose of such rules would be best furthered if an attorney discovering a conflict of interest took no action that may be inimical to the client's interests. The existence of a conflict, if not actually tolling the time period for answering discovery requests, should at least be a factor when evaluating the reasons for an untimely response.

■ In the instant case, Falstaff first filed the motion to disqualify McClellan and then filed the request for admissions barely two weeks later. Falstaff could not expect Gutting to answer the request during the pendency of the motion to disqualify her

---

**5.** We are puzzled by Falstaff's claim that it was compelled to take costly depositions regarding the matters requested when, in fact, the depositions were taken after the court had denied Gutting's motion to file answers out of time. Although taking the depositions may have been prudent, the cost of the depositions cannot be considered prejudicial in the rule 36(b) sense.

attorney. *Cf. St. Regis Paper Co. v. Up-grade Corp.,* 86 F.R.D. at 356 (party should not be required to answer a request for admissions during the pendency of a motion to quash the requests; motion to quash was pending almost four years). Indeed, once McClellan agreed to withdraw, Falstaff agreed to wait for a response until a new attorney had entered an appearance and had an opportunity to review the file. Wilson entered an appearance on December 11, 1981; his appearance was formally accepted on December 17. Sanders, counsel for Falstaff, concedes that he advised Wilson the extension of time for a response was good for a reasonable period of time. In early January 1982 Sanders and Wilson again informally agreed that the time for answering the requests could be extended a little while longer. Falstaff admits that it would have accepted the answers through the end of January and perhaps during the first few days of February. Affidavit of Steven P. Sanders, dated April 9, 1982. In the affidavit of Wilson, he swears that he discovered a possible conflict of interest on January 30, 1982, as he was preparing responses to the discovery requests. He notified Sanders of the conflict of interest on February 6 and requested leave to withdraw on February 8. *At the time Wilson discovered the existence of the conflict, Falstaff concedes that answers to the request still would have been accepted.* It was sometime after January 30 that Falstaff began to consider the matters in the request admitted.

Falstaff contends that regardless of Wilson's conflict of interest he could have responded to the request for admissions. Wilson's conflict related only to certain upcoming depositions and did not affect his ability to answer the request. We disagree. As we read the conflict-of-interest rules, any actions taken by Wilson may have appeared to be inimical to Gutting's interests.[6] Wilson could not have responded to the request as long as he was hindered by a conflict of interest in any aspect of his representation.[7]

We do not mean to imply disapproval of the district court's use of discovery sanctions in appropriate cases. An attorney's conflict of interest and his or her resulting inability to act must be distinguished from the situation in which the attorney's failure to act was inexcusable. *Cf. Link v. Wabash Railroad,* 370 U.S. 626, 634–36, 82 S.Ct. 1386, 1390–92, 8 L.Ed.2d 734 (1962) (dismissal with prejudice for failure to prosecute was partially due to attorney's failure to appear at pretrial conference); *Sutherland v. ITT Continental Baking Co.,* 710 F.2d 473 (8th Cir.1983) (dismissal with prejudice and denial of rule 60(b) motion to reinstate was due to counsel's failure to appear at trial setting even though she knew or should have known of the setting). In *Link* and *Sutherland* the situations warranted the severe sanction of dismissal. In Mrs. Gutting's case it would be inequitable to deem the requests admitted and penalize her because of her attorney's compliance with the rules of professional responsibility. *See Pickens v. Equitable Life Assurance Society,* 413 F.2d 1390, 1394 (5th Cir.1969) (where failure to reply to request for admissions is "clearly inadvertent," policy is "to favor substantial justice over technical contentions"); *Hadra v. Herman Blum Consulting Engineers,* 74 F.R.D. 113, 114 (N.D.Tex.1977) ("The court must strike a balance between the interests of justice and diligence in litigation.").

We reverse the judgment of the district court and remand for further proceedings with directions that the district court set a reasonable time period in which to allow Gutting to file answers to the request for admissions.

---

**6.** *See* Model Code of Professional Responsibility Canon 9 (1980), providing "A Lawyer Should Avoid Even the Appearance of Professional Impropriety."

**7.** We do not know why it took Wilson one week to inform Sanders of the conflict and another three weeks to withdraw formally from the case and have Mr. Dempsey enter his appearance. Falstaff complains of this time lag because it was required to cancel several depositions. Given the pending deposition schedule and trial setting, an expeditious substitution of counsel would have been appropriate. Nevertheless, our analysis of the conflict-of-interest problem remains the same.