**COCA–COLA BOTTLING COMPANY OF SHREVEPORT, INC., et al., Plaintiffs,**

v.

**The COCA–COLA COMPANY, a Delaware corporation, Defendant.**

**ALEXANDRIA COCA–COLA BOTTLING COMPANY, LTD., et al., Plaintiffs,**

v.

**The COCA–COLA COMPANY, a Delaware corporation, Defendant.**

Civ. A. Nos. 83–95 MMS, 83–120 MMS.

United States District Court, D. Delaware.

Nov. 29, 1988.

Edmund N. Carpenter, II, Charles F. Richards, Jr., and Jesse A. Finkelstein, of Richards, Layton & Finger, Wilmington, Del., of Counsel: Emmet J. Bondurant, and Jane F. Vehko, of Bondurant, Mixson & Elmore, Atlanta, Ga., Miles J. Alexander, Jerre B. Swan, and William H. Brewster, of Kilpatrick & Cody, Atlanta, Ga., for plaintiffs.

Andrew B. Kirkpatrick, Jr., William O. LaMotte, III, and Richard D. Allen, of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., of Counsel: Frank C. Jones, Michael C. Russ, and George S. Branch, of King & Spalding, Atlanta, Ga., for defendants.

MURRAY M. SCHWARTZ, Chief Judge.

After eight years of litigation and approximately one month prior to the commencement of the five-month bench trial on the merits of the litigation, this Court held its final pretrial conference on September 12-13, 1988. At the conference, defendant, The Coca-Cola Company (the "Company"), made an oral motion for permission to withdraw its answers to plaintiffs', the Coca-Cola Bottling Company of Shreveport, Inc., et al. (the "Bottlers"), Request for Admissions served by plaintiffs November 19, 1986. This Court denied defendant's oral motion but granted the defendant permission to file a written motion under Fed.R. Civ.P. 36(b) seeking to amend and clarify its response to plaintiffs' Request for Admission.

The written motion to clarify and amend, now before this Court, will be denied for the reasons set forth below.

I.

A. *Facts*

There are two related actions before the Court: *Coca-Cola Bottling Co. of Elizabethtown, Inc. v. The Coca-Cola Company,* Nos. 81-48/87-398 MMS Consolidated ("Elizabethtown"), and *Coca-Cola Bottling Co. of Shreveport, Inc. v. The Coca-Cola Company,* No. 83-95 MMS; and *Alexandria Coca-Cola Bottling Co., Ltd. v. The Coca-Cola Company,* No. 83-120 MMS ("*diet Coke*"). The *Elizabethtown* litigation concerns the Company's decision to substitute high-fructose corn syrup ("HFCS" or "HFCS-55") for granulated sugar in the syrup sold by Coca-Cola to its bottlers. The diet Coke litigation centers primarily on the bottlers belief that the Company is obligated to supply them diet Coke syrup under the terms of the existing bottler contracts. The *Elizabethtown* trial commenced September 26, 1988, with the *diet Coke* trial is scheduled to begin as soon as the *Elizabethtown* trial is completed, both trials are scheduled to be completed no later than February 15, 1989.

More than eight years ago, the Company began to convert the syrup supplied to its bottlers from 100% sugar sweetened to a syrup sweetened with a combination of HFCS-55 and sugar. Eventually all the Coca-Cola syrups, old Coke, new Coke, Coca-Cola Classic, caffeine-free Coke and cherry Coke were at some point sweetened solely with HFCS-55. At issue is whether this Court should allow defendant to amend

and clarify its admission that the term "Coca–Cola Bottler's Syrup," within plaintiffs' contracts, includes syrups sweetened with HFCS–55. Plaintiffs contend that the defendant has made such an admission in defendant's response to plaintiffs' Second Request for Admissions and, moreover, has maintained its admission by means of pleadings, sworn testimony and precluded discovery in the course of the litigation. Defendant argues that plaintiffs' construction is "strained and unfair" and ignores the Company's predicate contentions that underlie its admissions.

Before the Court is defendant's motion to clarify and amend its responses to plaintiffs' Second Requests for Admissions Nos. 22–25 and 61. Plaintiffs served defendant with these second requests for admissions November 19, 1986. Defendant responded to plaintiffs' Second Requests for Admissions on January 6, 1987, and then revised its responses to requests 22, 24, 25, and 61(e) on March 27, 1987.

### B. *The Admissions in Issue*

Plaintiffs' Second Requests for Admissions and defendant's initial responses in issue are as follows:

*Request No. 23*

That the syrup for Coca–Cola (new Coke) is "Coca–Cola Bottle Syrup" and is covered (a) by the unamended bottler's contract and (b) by the 1978 Amendment.

*Response to Request No. 23*

Admitted.

*Request No. 61*

That each of the following syrups is "Coca–Cola Bottler's Syrup" and, is covered by the unamended first-line Coca–Cola bottlers' contracts, and by the 1978 Amendment:

(a) The syrup manufactured by The Coca–Cola Company and supplied to the unamended Coca–Cola bottlers as "Coca–Cola Bottler's Syrup" beginning in January, 1980, and sweetened with a blend of 50% sugar (sucrose) and 50% High Fructose Corn Syrup-55.

(b) The syrup manufactured by The Coca–Cola Company and supplied to the unamended Coca–Cola bottlers as "Coca–Cola Bottler's Syrup" beginning in February 7, 1984, and sweetened with a blend of 75% HFCS–55 and 25% sugar (sucrose).

(c) The syrup manufactured by The Coca–Cola Company and supplied to the unamended Coca–Cola bottlers as "Coca–Cola Bottler's Syrup" beginning November 6, 1984 and until April 24, 1985, and sweetened with 100% HFCS–55 and containing no "sugar" (sucrose).

(d) The syrup for new Coke manufactured by The Coca–Cola Company and supplied to the unamended Coca–Cola bottlers since April 1985, that is sweetened with 100% HFCS–55 and contains no "sugar" (sucrose).

(e) The syrup for Coca–Cola Classic manufactured by The Coca–Cola Company and supplied to the unamended Coca–Cola bottlers since July 10, 1985, that is sweetened with 100% HFCS–55 and contains no "sugar" (sucrose).

*Response to Request No. 61*

The Company objects to this request to the extent that it suggests that HFCS–55 is not sugar. Subject to this objection, the Company admits subsection (a)–(d) as written. The Company can neither admit nor deny subsection (e) for the reasons set forth in Response 22.

The Company, on January 6, 1987, stated that it could neither admit nor deny that the syrups for Coca–Cola Classic (Request No. 22, 61(e)), caffeine-free (No. 24), and cherry (No. 25) were Coca–Cola Bottler's Syrup. On March 22, 1987, the Company revised its responses to plaintiffs' Second Request for Admissions No. 22 (and by reference, 61(e)), 24 and 25. The requests and the revised responses were as follows:

*Request No. 22*

That the syrup for Coca–Cola Classic is "Coca–Cola Bottle Syrup" and is covered (a) by the unamended bottler's contract and (b) by the 1978 Amendment.

*Revised Response to Request No. 22*

... the Company is willing to stipulate solely for the purposes of this litigation, if the plaintiffs so desire, that the bottle syrup for Coca–Cola Classic is Coca–Cola

Bottle Syrup within the meaning of the unamended Coca–Cola Bottle Contract and the 1978 Amendment.

*Request No. 24*

That the syrup for caffeine free Coca–Cola is "Coca–Cola Bottle Syrup" covered (a) by the unamended bottler's contract and (b) by the 1978 Amendment, without regard to the execution of any letter agreement concerning caffeine free Coca–Cola.

*Revised Response to Request No. 24*

... the Company is willing to stipulate solely for the purposes of this litigation if the plaintiffs so desire, that the bottle syrup for caffeine-free Coca–Cola is Coca–Cola Bottle Syrup within the meaning of the unamended Coca–Cola Bottle Contract and the 1978 Amendment.

*Request No. 25*

That the syrup for Cherry Coke is "Coca–Cola Bottle Syrup" covered (a) by the unamended bottler's contract and (b) by the 1978 Amendment, without regard to the execution of any letter agreement concerning caffeine-free Coca–Cola.

*Revised Response to request No. 25*

... the Company is willing to stipulate solely for the purposes of this litigation, if the plaintiffs so desire, that the bottle syrup for Cherry Coke is Coca–Cola Bottle Syrup within the meaning of the unamended Coca–Cola Bottle Contract and the 1978 Amendment.

## II.

### A. *The Company's Contentions*

The Company asserts that throughout this litigation its defense has been based on three underlying principles: (1) Coca–Cola Bottle Syrup under the unamended contracts must contain not less than 5.32 pounds of sugar per gallon, (2) HFCS–55, in addition to sucrose, is sugar under the unamended contracts, and (3) sugarless syrups, like diet Coke, cannot be Coca–Cola Bottle Syrup under the unamended contracts. Thus, defendant asserts, its admissions are based on the assumption that HFCS–55 is sugar and now seeks to amend

and clarify its admissions to reflect this assumption.

The Company argues that it has adhered consistently throughout the litigation to its sugar-based definition of Coca–Cola Bottle Syrup. The Company points to deposition testimony, briefing and discovery responses to support its assertion. In the deposition testimony of senior Coca–Cola executives, defendant asserts that each has stressed the definitional significance of sugar. *See* Def. Opening Brief, Deposition of R. Dyson (App. B) ("... it is my belief ... that Coca–Cola syrup is that which is made by the Coca–Cola Company for the express purpose of selling it to the bottlers under that name, that it meets the criteria of having at least 5.32 pounds of sugar per gallon...."); Def. Opening Brief, Deposition of Keough (App. B) ("I do know that, among other things, Coca–Cola bottle syrup contains an appropriate nutritive sweetener"); Def. Opening Brief, Deposition of R. Goizueta (App. B) ("My understanding and belief, what makes Coca–Cola Bottle Syrup is, number one, it's a syrup that according to a consent decree must contain 5.32 pounds of sugar."). In its response to plaintiffs' Second Interrogatories, the Company on April 14, 1987 stated, "that the unamended Coca–Cola Bottle Contract limits the right of the bottlers to purchase from the Company only a syrup containing not less than 5.32 pounds of sugar." Def. Opening Brief (App. B). And in its response to plaintiffs' first set of Interrogatories dated August 7, 1985, the defendant stated, "Coca–Cola Bottle Syrup is the sugar-sweetened syrup manufactured by The Coca–Cola Company and sold to the Bottlers as Coca–Cola Bottle Syrup that (1) contains not less than 5.32 pounds of sugar, as provided in paragraph 10 of the 1921 Consent Decree...." *Id.*

Furthermore, the Company asserts that it has always contended that HFCS–55 is "sugar" within the meaning of plaintiffs' unamended contracts. *See, e.g.*, Def. Opening Brief, Response to Interrogatories filed February 2, 1987 (App. C) (term "sugar" as used in the unamended bottler contracts to define "Coca–Cola Bottle Syrup" refers to those nutritive sweeteners that are mem-

bers of the family of complex carbohydrates including not only sucrose, but also fructose and glucose); Def. Opening Brief, Response to Interrogatories filed September 23, 1983, (App. C) (sugar is a generic term which describes a wide variety of carbohydrates, a number of which are used as sweeteners; for example, sucrose, glucose and fructose are each known as "sugar"). The Company also asserts that it has consistently denied discovery requests seeking the admission that HFCS-55 is not sugar under the Consent Decrees or unamended contracts. *See, e.g.,* Def. Opening Brief, Defendant's Response to Plaintiffs' Second Request for Admissions filed January 1, 1986 (App. D) (defendant denied HFCS-55 not sugar as term used in unamended first-line Coca-Cola Bottlers' Contract); Def. Opening Brief, Responses of the Coca-Cola Company to Plaintiffs' First Interrogatories, filed August 17, 1981, (App. E) (use of HFCS-55 in Coca-Cola Bottle Syrup does not constitute "substitution" for "sugar" when viewed in context of Company's obligation to supply such syrup to unamended bottlers; Company contends its obligation to supply sufficient syrup to unamended first-line bottlers for bottling purposes met whether syrup includes sugar made from cane or from beet, or produced from corn starches in form of HFCS-55).

The essence of the Company's argument is that the plaintiffs have never posed directly in their discovery requests whether HFCS-55 sweetened syrup is Coca-Cola Bottle Syrup under the unamended contracts *if HFCS-55 is ultimately determined not to be sugar under the unamended contracts.* The Company insists that it has always responded to plaintiffs' questions concerning the contractual status of those bottle syrups under the unamended contract based on the assumption that HFCS-55 is sugar.

The Company cites plaintiffs' Second Request for Admissions No. 61 as the closest plaintiffs have come to asking the proper question by distinguishing between sugar and HFCS-55. Request 61 asks:

> That each of the following syrups is covered by the unamended first-line

Coca-Cola bottlers' contracts and by the 1978 Amendment....

(d) The syrup for new Coke manufactured by the Coca-Cola Company and supplied to the unamended Coca-Cola bottlers since April, 1985 that is sweetened with 100% HFCS-55 and contains no 'sugar' (sucrose)....

*The Company's Response*

The Company objects to this Request to the extent that it suggests that HFCS-55 is not sugar. Subject to this objection, the Company admits subsections a-d as written.

The Company believes it is unreasonable and unfair to construe this response either as an admission that Coca-Cola Bottle Syrup need not contain any sugar whatsoever or as an admission that bottle syrup containing HFCS-55 is Coca-Cola Bottle Syrup even if HFCS-55 is not sugar because such a construction disregards the factual contentions upon which the Company's responses are predicated.

### B. *Plaintiffs' Contentions*

Plaintiffs couch their argument in terms of Fed.R.Civ.P. 36(b). Rule 36(b) provides that at the discretion of the Court, admission may be withdrawn or amended when the merits of the case will be subserved and the party obtaining the admission fails to satisfy the court that withdrawal or amendment of the admission will prejudice him.

Plaintiffs argue that the presentation of the merits will not be improved by allowing defendant to revise its admission since the record as it exists supports the truth of the admissions. Also, plaintiffs assert, defendant cannot claim that its admissions were made inadvertently under a mistaken belief that HFCS-55 was sugar. This is so plaintiffs contend because the defendant had the benefit of two of this Court's decisions holding that HFCS-55 was not sugar as the term was used in paragraph 10 of the 1921 Consent Decrees.

Plaintiffs also argue that they would be severely prejudiced by allowing defendant to tamper with its admissions. Plaintiffs assert they relied on the conclusiveness of

defendant's answers in developing their theory of the case in its summary judgment motions. Similarly, the plaintiffs allege they would be prejudiced because they do not have sufficient resources to reorganize their strategy, witnesses, and documents to meet the new factual issues that would be presented if defendant was permitted to withdraw its admissions. Finally, plaintiffs vigorously argue they would be prejudiced because they did not pursue discovery in reliance on the admissions and defendant's offer to stipulate to the substance of the admissions. They also correctly assert defendant directed deponents not to answer on this subject area based on their offer to stipulate.

## III. DISCUSSION

Rule 36(b) of the Federal Rules of Civil Procedure specifies the effect of a party's admission and when a court may permit withdrawal or amendment of a response to a request for an admission.[1] Rule 36(b) provides:

> Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission. Subject to the provisions of Rule 16 governing amendment of a pre-trial order, the court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits.

The Rule places a burden on both the party who makes the admission and the party who obtains the admission. The party making the admission must show that the presentation of the merits will be subserved. The party obtaining the admission must satisfy the court that the withdrawal or amendment of the admission will prejudice him.

■ The purpose of allowing requests for admissions under Fed.R.Civ.P. 36 is to expedite trial by establishing certain material facts as true and thus narrowing the range of issues for trial. *ASEA, Inc. v. Southern Pac. Transp. Co.*, 669 F.2d 1242, 1245 (9th Cir.1981); *Branch Banking and Trust Company v. Deutz–Allis Corp.*, 120 F.R.D. 655, 657 (E.D.N.C.1988). *See also Advisory Committee's Note To the 1970 Amendments of Rule 36*, 48 F.R.D. 487, 532 (1970) (admissions are sought to facilitate proof with respect to issues that cannot be eliminated from case and to narrow issues by eliminating those that can be).

In 1970, Rule 36(b) was amended to give an admission a conclusively binding effect unless the admission is withdrawn or amended. The Advisory Notes stated that "[I]n form and substance a Rule 36 admission is comparable to an admission in pleadings or a stipulation drafted by counsel for use at trial, rather than an evidentiary admission of a party. Unless the party securing an admission can depend on its binding effect, he cannot safely avoid the expense of preparing to prove the very matters on which he has secured the admission, and the purpose of the rule is defeated." 48 F.R.D. at 534.

The Court of Appeals for the Third Circuit similarly treats a Fed.R.Civ.P. 36 admission as judicial and not evidentiary. *Airco Indus. Gases v. Teamsters Health & Welfare Pension Fund*, 850 F.2d 1028, 1036 (3d Cir.1988). In *Airco*, the court stated that courts prior to the 1970 amendments "seemed to ignore the distinction between evidentiary admissions and judicial admissions. A . . . judicial admission, delib-

---

**1.** Rule 36 provides, *inter alia,* that

[a] party may serve upon any other party a written request for the admission, for purposes of the pending action only, of the truth of any matters within the scope of Rule 26(b) set forth in the request that relate to statements or opinions of fact or of the application of law to fact including the genuineness of any documents described in the request. . . .

A party who considers that a matter of which an admission has been requested presents a genuine issue for trial may not, on that ground alone, object to the request: the party may, subject to the provisions of Rule 37(c), deny the matter or set forth reasons why the party cannot admit or deny it. Fed.R.Civ.P. 36(a).

erately drafted by counsel for the express purpose of limiting and defining the facts in issue, is traditionally regarded as conclusive, and an admission under Rule 36 falls in this category." Further, the Court stated, an admission is a "studied response made under sanctions against easy denial. It is made under the direction and supervision of counsel, who has full professional realization of their significance. Thus an admission is not merely another layer of evidence upon which the district court can super impose its own assessment of weight and validity but rather an unassailable statement of fact that narrows the triable issues in the case." *Id.* at 1036–37 (citing 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2264 at 742–43 (1970 and Supp.1987).

Despite the way that Rule 36 is viewed, a court may permit withdrawal or amendment of an admission, thus vitiating the binding effect of the admission. Such withdrawal or amendment is appropriate when (1) the presentation of the merits will be subserved thereby and (2) the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits. Fed.R.Civ.P. 36(b). Thus Rule 36(b) emphasizes "the importance of having an action resolved on the merits, while at the same time assuring each party that justified reliance on an admission in preparation for trial will not prejudice him. *Advisory Committee's Notes to the 1970 Amendments of Rule 36,* 48 F.R.D. at 534. *See also Branch Banking,* 120 F.R.D. at 658 (court's discussion to grant withdrawal focused on equitable principles balancing right of full trial on merits with necessity of justified reliance by parties on pretrial procedures and finality of issues deemed no longer in dispute).

Because the language of the Rule is permissive, the Court has substantial discretion in deciding whether to grant an amendment of the admission. The Court need not make an exception to Rule 36 even if "both the merits and prejudice issues cut in favor of the party seeking exception to the rule." *Kleckner v. Glover Trucking Corp.,* 103 F.R.D. 553, 557 (M.D. Pa.1984) (quoting *Donovan v. Carls Drug Co., Inc.,* 703 F.2d 650, 652 (2d Cir.1983).

### A. *Presentation of the Merits*

In considering whether the presentation of the merits will be improved by permitting an admission to be revised, courts have generally sought to determine whether the admission is contrary to the record of the case. *See, e.g., Branch Banking,* 120 F.R.D. at 658–59 (disallowing amendment of admission since no affidavit, verified pleading or other evidence suggests admission, if left standing, would render unjust result); *United States v. Golden Acres, Inc.,* 684 F.Supp. 96, 99 (D.Del.1988) (denying admission withdrawal because, among other reasons, record strongly indicates that facts previously admitted would be easily proved); *Clark v. City of Munster,* 115 F.R.D. 609 (D.Ind. 1987) (holding late response to admission request permitted where deposition and response concur).

In the case at bar, the evidence of record reflects deposition testimony and pleadings consistent with defendant's response to the request for admission. In deposition testimony both the chairman of the board of The Coca–Cola Company, Roberto Goizueta and the president of Coca–Cola USA, Brian Dyson, stated that Coca–Cola syrup sweetened with 100% HFCS–55 was Coca–Cola Bottler's Syrup.

Goizueta testified as follows on July 5, 1985:

Q. Is the syrup from which new Coke is made Coca–Cola Bottle Syrup?[2]

A. It is.

Q. Is the syrup from which old Coke, that is, the Coke that was being produced on or before April 22, 1985, Coca–Cola Bottle Syrup?

MR. JONES: Was it Coca–Cola Bottle Syrup at the time; is that your questions?

MR. BONDURANT: Was it at the time?

THE WITNESS: Yes.

---

**2.** The syrup for new Coke was sweetened with 100% HFCS–55.

Q. The syrup that existed prior to April 22, 1985, was sweetened with HFCS–55 at a hundred percent level?

A. Yes.

Q. And the syrup that is produced after April 22, 1985, is sweetened with HFCS–55?

A. Right.

Q. You tell me now that the syrup that was used for Coca–Cola up through April 22, 1985, is no longer Coca–Cola Bottle Syrup, correct?

A. Correct.

　　*　　*　　*　　*　　*　　*

Q. Does a Coca–Cola bottler have the option of purchasing from The Coca–Cola Company syrup made according to the formula prior to April 22, 1985?

A. As Coca–Cola Syrup?

Q. Yes.

A. No.

Q. If a bottler demanded that The Coca–Cola Company supply syrup made according to the formula in effect prior to April 22, 1985, would The Coca–Cola Company comply with that demand?

A. As Coca–Cola Syrup?

Q. Yes.

A. The Coca–Cola Company will not.

Goizueta Dep., Tr. pp. 109–115 (July 5, 1985).

Similarly, Dyson testified in depositions that HFCS–55 sweetened syrups were Coca–Cola Bottler's Syrup. Prior to defendant's reintroduction of Coca–Cola Classic, Dyson testified that:

Q. I was not trying to deal with a quantitative term. It is true, is it not, that since November of 1984 Coca–Cola bottlers syrup manufactured by The Coca–Cola Company and supplied to bottlers in the United States has not contained any sucrose?

A. I can't remember the exact date but I think that there is certainly let's take it within the last two or three months, that is absolutely true.

Q. And the Coca–Cola bottlers syrup being manufactured on April 22 under what the company has called the old formula contained only HFCS–55 as its sole sweetener?

A. Yes.

Q. And the Coca–Cola bottlers syrup manufactured today contains no sucrose?

A. Yes.

Q. And the Coca–Cola bottlers syrup today manufactured under the new formula with the new taste contains only HFCS–55 as its sole sweetener?

A. Yes.

Dyson Dep., Tr. pp. 159–61 (May 21, 1985). Again after the reintroduction of old Coke as Coca–Cola Classic, Dyson testified that both old Coke and new Coke, sweetened with 100% HFCS–55, were Coca–Cola Bottler's Syrup.

Q. Now, you would concede, would, you not, that the syrup was Coca–Cola bottler's syrup within the meaning of the first line Coca–Cola bottlers contracts prior to april 22, 1985

A. Yes.

Q. You have absolutely no doubt about that?

A. No.

Q. But you are unable to reach a conclusion whether or not it is Coca–Cola bottlers syrup at the present time?

A. That is correct.

Q. And the only thing you lack to make a decision is you haven't been told by your lawyers what The Coca–Cola Company's position ought to be?

A. I can't make that statement.

Dyson Dep. Tr. pp. 270–71 (August 22, 1985). These admissions iterate defendant's admission that Coca–Cola syrup sweetened with HFCS–55 is Coca–Cola Bottler's Syrup. Defendant argues that because these witnesses also testified at their depositions that Coca–Cola Bottle's Syrup must contain sugar and that HFCS–55 is sugar, the admissions of defendant must be construed to reflect such statements. However, the statements of the deposed witnesses are clear and unambiguous that syrup containing HFCS–55 is Coca–Cola Bottler's Syrup.

The statements by Goizueta and Dyson that Coca–Cola Bottler's Syrup must contain 5.32 pounds of sugar and that HFCS–55 is sugar are merely affirmations of defendant's contention that HFCS–55 is sugar and thus interchangeable with sucrose. These statements, when read in conjunction with the testimony that old Coke syrup and Coca–Cola Classic syrup are Coca–Cola Bottler's Syrup, reflect that defendant is asserting two separate propositions. The first argues that HFCS–55 is sugar under the unamended contracts. The second is that the defendant considers syrup sweetened with HFCS–55 to be Coca–Cola Bottler's Syrup. Defendant responded to a request for admission of the second proposition affirmatively and without reservation except in response to Request 61. Defendant's response in Request 61 objected only to the extent that HFCS–55 is not sugar but then admitted that HFCS–55 sweetened syrup is Coca–Cola Bottler's Syrup.

The Company argues that the above propositions are interrelated and that its response assumed a situation where the Court would hold that HFCS–55 was sugar. The Company relies on *Reyes v. Vantage Steamship Co.*, 672 F.2d 556 (5th Cir.1982), in arguing that under the proper circumstances, an admission based on a faulty assumption or mistake of law should be allowed to be withdrawn. *Id.* at 559. In *Reyes*, plaintiff admitted that its counsel had been advised of bankruptcy proceedings before the time for filing claims had expired. However, plaintiff's counsel only notice was a receipt of a letter from defendant's counsel on the last day of the claims period and under bankruptcy law this letter did not constitute the requisite notice. The court allowed the withdrawal because of plaintiff's faulty assumption that the letter constituted sufficient notice. The Company argues that its situation is analogous because plaintiffs' construed the Company's responses as assuming that HFCS is not sugar, while the Company's responses are conditioned on the opposite premise. The Company, however, cannot controvert the plain language of its response. If the Company had sought to condition its response it should have done

so, especially since, prior to the revised response, it had the benefit of two opinions of the Court holding HFCS–55 is not sugar.

In *Coke III*, [*Coca–Cola Bottling Company of Elizabethtown, Inc. v. Coca–Cola Company*] 654 F.Supp. 1388, 1406 (D.Del. 1986), and *Coke IV*, [*Coca–Cola Bottling Company of Elizabethtown, Inc. v. Coca–Cola Bottling Company*] 654 F.Supp. 1419 (D.Del.1987), this Court ruled that HFCS–55 is not "sugar" under paragraph 10 of the Consent Decrees without reaching the separate question of whether HFCS–55 is "sugar" under the plaintiffs' unamended bottler contracts. The Court did state, however, that "the meaning of the contract terms are derived, in part, from the Consent Decrees." *Coke IV*, 654 F.Supp. at 1447. The Company's initial response to the plaintiffs' Second Request for Admission was on January 6, 1987, five months after the Court's decision in *Coke III*. After *Coke IV*, defendant revised its responses to requests Nos. 22, 24, and 25 from statements that it could neither admit nor deny those requests to admissions that the syrups for Coca–Cola Classic, caffeine-free Coca–Cola, and cherry Coca–Cola were Coca–Cola Bottler's Syrups.

Defendant's subsequent revision of its admissions after this Court's holdings in *Coke III* and *Coke IV* prohibits defendant from arguing that its admissions were made inadvertently under a mistaken belief that HFCS–55 was sugar. Defendant's admissions that HFCS-sweetened syrups are Coca–Cola Bottler's Syrups were made with the knowledge that this Court had held HFCS is not sugar for purposes of paragraph 10 of the 1921 Consent Decrees. The Company in the face of *Coke III* and *Coke IV* chose, in its response, to admit that syrups sweetened with HFCS–55 were Coca–Cola Bottler's Syrup as to the unamenders. An admission, deliberately drafted by counsel, for the express purpose of limiting and defining the facts in issue is regarded as conclusive. *Airco*, 850 F.2d at 1036. The admission by the Company is unambiguous and plainly worded. *Id.* at 1036 (where dispute exists as to meaning of

admission, court will not controvert plain wording of the admission).

Defendant has neither put forth evidence from the record directly contradicting its admissions nor has defendant shown the admission was one of inadvertence or mistake. Thus the merits will not be subserved by this Court permitting withdrawal of the admission.

### B. Prejudice to the Plaintiffs

Rule 36(b) requires that the party obtaining the admissions show that the withdrawal of the admission will prejudice him in maintaining his action or defense on the merits. Generally, courts have defined the prejudice as relating "to the difficulty a party may face in proving its case because of the sudden need to obtain evidence required to prove the matter that had been admitted." [3] *Gutting v. Falstaff,* 710 F.2d 1309, 1314 (8th Cir.1983); *Brook Village North Associates v. General Electric Co.,*

686 F.2d 66, 70 (1st Cir.1982); *Clark,* 115 F.R.D. 609 (N.D.Ind.1987).

Plaintiffs have justifiably relied, to their detriment, on defendant's admissions and have suffered prejudice in a number of ways. First, plaintiffs were precluded from discovery due to defendant's offer to stipulate the Company's response to plaintiffs' requests Nos. 22, 24 and 25. In the deposition of Goizueta, he was instructed by counsel not to answer the question of whether Coca–Cola Classic syrup is Coca–Cola Bottler's Syrup. Counsel for defendant stated, at the deposition, however, that the Company would enter into such a stipulation. On July 31, 1987, plaintiffs deposed D. Keough, President of The Coca–Cola Company. He was told not to answer a similar question because defendant's counsel stated, "we have offered to stipulate, as you well know, for the sole purpose of the issues in this case, that the syrup for Classic shall be treated as if it is Coca–Cola Bottlers Syrup." Keough Dep., Tr. pp. 658–662 (July 21, 1987).[4]

---

**3.** The Company seeks to apply the standard of Federal Rule of Civil Procedure 15(a) to the Rule 36(b) motion. This argument is without merit. Rule 15(a) provides that leave is to be "freely given when justice so requires." Fed.R. Civ.P. 15(a). Conversely, a Rule 36(b) admission is conclusive and courts should refrain from permitting unnecessary withdrawal or amendment of admissions. *See generally* 8 C. Wright & A. Miller, *Federal Practice and Procedure:* § 2264 (1970 and Supp.1987); *999 v. C.I. T. Corp.,* 776 F.2d 866, 869 (9th Cir.1985). Thus the standard of Rule 15(a) is inapplicable to a Rule 36(b) motion.

**4.** The relevant portion of the deposition is as follows:

Q. Now, if the syrup for the Coca–Cola Classic is the same as what The Coca–Cola Company supplied to the bottlers as Coca–Cola bottlers syrup prior to April 23, 1985, is it your conclusion that Coca–Cola Classic syrup is, therefore, Coca–Cola bottlers syrup today?

MR. JONES: I am going to object to that and instruct him not to answer it; and I would like to state on the record, number 1, this clearly is outside the scope of the topics and I am going to ask that the court reporter at the proper time attach a copy of Mr. Bondurant['s] letter of July 27th, 1987, which I think will make that quite plain.

The second point, Mr. Bondurant, is that I think this is both unnecessary and unfair. We have repeatedly explained that there are valid business reasons why it is not in the

interest of either the bottlers or the company to force the issue of whether or not the syrup for Classic is or is not Coca–Cola bottlers syrup within the meaning of the contract.

At the same time, however, we have repeatedly pointed out that it is being provided as if it is Coca–Cola bottlers syrup; and we have offered to stipulate, as you well know, for the sole purpose of the issues in this case that the syrup for Classic shall be treated as if it is Coca–Cola bottlers syrup.

\* \* \* \* \* \*

Q. Mr. Keough, can you give us any reason why if the syrup for Coca–Cola Classic is, as you state, identical to the syrup which The Coca–Cola Company provided as Coca–Cola bottlers syrup to bottlers prior to April 23, 1985, that it would not still be Coca–Cola bottlers syrup for purposes of the bottlers contract?

MR. JONES: That is objective, Mr. Bondurant; and, again, it necessarily calls for the witnesses to undertake to reach a legal judgment. I am going to instruct him not to answer that question. There is, furthermore, no relevance whatever to the question in view of the stipulation that we have.

MR. BONDURANT: We simply don't agree with, that, Mr. Jones. I may point out you haven't signed the stipulation, although I sent it over to you several weeks ago.

MR. JONES: That is a minor detail because I think we are in accord as to the substance of the stipulation.

Discovery in this case has been closed since late August, 1987. The Company's refusal to permit deposition testimony is prejudicial. *See Lee v. Sheller Globe Corp.,* 115 F.R.D. 469, 470 (S.D.Miss.1986) (holding prejudice exists where party forgoes discovery which would have been directed at factual issues concluded by opposing party's admission).

Second, plaintiffs are prejudiced by defendant's unreasonable delay in bringing its motion to amend and clarify its admissions. Defendant served plaintiffs with its revised responses on March 27, 1987. Defendant never once directly asserted that HFCS-sweetened syrups for old, new, classic, caffeine-free and cherry coke were not Coca–Cola Bottler's Syrup until late August 1988, after the Court ruled in *diet Coke V.* 1988 U.S. Dist. Lexis 10197 (D.Del.1988). However, even as of August 1988, defendant did not move to amend or withdraw its revised responses to plaintiffs' Second request for Admissions.

Defendant argues that plaintiffs could not have justifiably relied on the admissions because plaintiffs were put on notice by the defendant's briefs on the motions for summary judgment on the amended contract filed between December 1987 and January 1988. The Company relies on the following language in its brief to support its position:

> Without any doubt, the Company always has asserted in its pleadings from the inception of this litigation that Coca–Cola Bottle Syrup must contain sugar. Likewise, plaintiffs contentions that Company executives have testified any differently are simply wrong.

Def. Opening Brief (App. I). With specific reference to its responses, the Company stated as follows in its brief:

> [T]he Company has agreed to stipulate that all their additional sugar-sweetened syrups are treated as Coca–Cola Bottle

Syrup under the first-line bottler contracts. *See* the Company's Revised Responses and Objections to Plaintiffs' Second Admission (Nos. 22, 24, and 25). Def. Reply Brief (App. E).

The plain construction of this language does not suggest a need for clarification of defendant's responses. The language merely suggests a reaffirmation by defendant of its contention that HFCS–55 is sugar under the unamended contract.

Moreover, plaintiffs are prejudiced if the Court were to allow the withdrawal of the admissions less than a month prior to the beginning of the *diet Coke* trial. At this late date, plaintiffs do not have the time to begin fresh discovery to establish facts previously admitted.[5] Similarly, plaintiffs do not have the resources to construct interrogatories to ascertain relevant witnesses and documents and then depose these witnesses and examine these documents in order to meet a new factual issue that plaintiffs were reasonably justified in relying on as admitted.[6] Finally, the time between the *Elizabethtown* and *diet Coke* cases has already been allocated. To allow new basic factual contentions completely opposite to that which was admitted to be added to the *diet Coke* case at this late date would prejudice the plaintiffs by forcing them to deviate trial time in *diet Coke* to those issues when both plaintiffs and defendant have cried loud and long that five months was not sufficient trial time. *See Golden Acres, Inc.,* 684 F.Supp. at 99 (permitting withdraw of admissions on eve of trial prejudices plaintiff where plaintiff relied on admissions in preparing briefs and preparing for trial).

Defendant has not shown why it could not have qualified its initial or revised responses to plaintiffs' Second Request for Admissions, nor has it explained its conduct at depositions which is directly contrary to its present position seeking to amend its responses. Instead defendant chose to ad-

---

5. Plaintiffs' counsel are in the midst of the *Elizabethtown* case. The *diet Coke* case will begin immediately following the conclusion of *Elizabethtown.* While defendant is using different trial teams for each case, plaintiffs are using the same attorneys for both cases.

6. The burden on plaintiffs to depose new, yet at this point undiscovered, witnesses to meet new factual issues is altogether different from this Court permitting a party during trial to depose known witnesses concerning known issues.

mit unambiguously that HFCS–55 sweetened syrup is Coca–Cola Bottler's Syrup under the unamended contracts, offered to stipulate to the same fact and precluded questions of its senior officer based on its admissions. Now more than 18 months after defendant's revised responses and when already engaged in the Elizabethtown trial, defendant seeks to revise its responses for a second time.

"A per se rule that a court must permit withdrawal of an admission simply because it relates to an important matter in the litigation is inappropriate in light of the discretionary language of the Rule and its purpose: to narrow the issues, thereby avoiding litigation of unessential and undisputed facts." *Branch Banking*, 120 F.R. D. at 660. "In a proper case, when an admission is made inadvertently, or new evidence is discovered after the admission despite due diligence, Rule 36(b) withdrawal should be allowed." *Id.* Here, in contrast, the admissions are unambiguous, were not made by reason of inadvertence or newly discovered evidence and were reenforced by offers of stipulations to justify instructing highly placed officers of defendant not to answer certain questions posed in depositions. In this case, pursuant to Rule 36(b), I find that the presentation of the merits would not be subserved and the plaintiffs would be prejudiced if the admissions were allowed to be clarified and amended.

For the reasons stated, an order will be entered denying defendant's motion to clarify and amend its responses to plaintiffs' request for admissions.